AO 91 (Rev. 11/11)   Criminal Complaint

LODGED
CLERK, U.S. DISTRICT COURT
10/07/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
10/7/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ D.C. _____ DEPUTY

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Viorel PRICOP | ) | Case No. 5:22-mj-00644 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February 28, 2022___ in the county of ___San Bernardino___ in the ___Central___ District of ___California___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, USC, Section 844(i) | Arson of Property in Interstate Commerce |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

/s/ Pursuant to Fed. R. Crim. P. 4.1
_____
*Complainant's signature*

Jonathan Smith, Special Agent, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/7/2022___

_____
*Judge's signature*

City and state: ___Riverside, CA___

U.S. Magistrate Judge Shashi H. Kewalramani
_____
*Printed name and title*

## AFFIDAVIT

I, Jonathan Smith, being duly sworn, declare and state as follows:

### I.   INTRODUCTION

1.    I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been so employed since June of 2020.  I am currently assigned to the Albuquerque I Field Office, Phoenix Field Division.

2.    In this capacity, I am tasked with the investigation of violations of federal criminal law, to include violation of federal firearms, narcotics, arson and explosives statutes. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), in that I am an officer of the United States who is empowered by law to conduct investigations and make arrests for the offenses enumerated in Title 18, 21, and 26, United States Code.

3.    I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training Program, and the ATF National Academy Special Agent Basic Training Program. During these programs, I received instruction in and practiced the investigation of violations of federal firearms, narcotics, arson and explosives statutes.

4.    Prior to my employment with ATF, I served as a Police Officer with the Chandler Police Department in Chandler, Arizona for approximately seven years.  I am a graduate of the Arizona

Law Enforcement Academy.  While employed as police officer, I participated in and conducted hundreds of criminal investigations involving various State criminal violations. During that time, I also made hundreds of arrests for violations of State law.

5.    As a result of my training and experience, I am familiar with federal criminal law, including firearms, narcotics, arson and explosives statutes.  I have also received training and gained experience in the investigation of violations of these statutes, and specifically in topics including; interview and interrogation techniques, arrest tactics, preparation of arrest and search warrants, investigative methodology, surveillance techniques, firearms identification and nomenclature, firearms trafficking investigations, narcotics investigations, explosives investigations, and fire related investigations.

## II. PURPOSE OF AFFIDAVIT

6.    This affidavit is made in support of a criminal complaint and arrest warrant for Viorel PRICOP ("PRICOP") for a violation of 18 U.S.C. § 844(i) (Arson of Property in Interstate Commerce) on February 28, 2022.

7.    The information contained in this affidavit is based upon your affiant's personal knowledge, consultation with other ATF agents, consultation with other law enforcement officers, a review of documents and reports, interviews, and information provided to your affiant by other law enforcement officers and agents of the United States.  This information is not a complete

statement of all the facts related to this case. This affidavit
is intended to show only that there is sufficient probable cause
for the requested warrant and does not set forth all of my
knowledge about this matter.  Unless specifically indicated
otherwise, all conversations and statements described in this
affidavit are related in substance and in part only.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

8.   From June 22, 2020, to September 14, 2022, PRICOP set
fire to twenty-five separate fires on tractor trailers owned by
Swift Transportation, a commercial trucking company.  The fires
occurred in eight different states and evinced the same general
modus operandi: the fires were set when the trucks were stopped
at a rest area or fueling station along Interstate highways.
Search warrant returns revealed that a specific cellular
connected device installed in a commercial truck was present at
ten of the fires during the early part of the investigation.

9.   Agents established that this device was installed on a
tractor trailer owned and operated by PRICOP, a resident of
Allen Park, Michigan.  Agents identified the cellular phone
subscribed to PRICOP and, through historical cellular data
analysis and ping warrants, learned that the phone was present
in the general area of 24 of the 25 fires.  Federal search
warrants were executed on PRICOP's vehicle and residence,
yielding additional evidence on his involvement in this series
of arson events.

10.  Further, records checks for PRICOP revealed that he
had been convicted of, among other things, transportation of

stolen goods in the United States District Court for the Eastern District of Michigan in 2018.  I reviewed documents from that case and learned Swift cooperated in investigating and prosecuting that case.  PRICOP was sentenced to about two years' imprisonment (time served), and PRICOP's term of supervised release ended around the June 2019, about one year before the fires in this case began.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

11.  On or about January 2022, I was contacted by the New Mexico State Fire Marshal's Office and briefed on a series of fire incidents involving commercial semi-trucks owned and operated by Swift Transportation, a commercial trucking company. Swift is a Phoenix, Arizona based interstate truckload shipping carrier, with over 20,000 trucks, and is the largest common carrier in the United States.  Swift operates more than 40 major terminals positioned near major freight centers and traffic lanes in the United States and Mexico.  I was briefed on approximately fourteen fire incidents that occurred between June 22, 2020, and January 5, 2022, involving semi-trailers belonging to Swift.  Since that initial briefing, an additional eleven Swift owned trailers have been burned, for a total of twenty-five involved vehicles.  ATF began investigating the previous fires and any new fires that occurred after January 2022.

12.  In each of these twenty-five incidents, a semi-truck/trailer owned by Swift was parked or stopped at a fuel station or rest area, when a fire occurred in or on the trailer portion of the commercial vehicle.  These incidents occurred at

different locations, spanning from Barstow, California to
McCalla, Alabama, and most incidents were located along
Interstate Highway 40 and Interstate Highway 10.  As of the
present date, I have learned of nine fires in the State of New
Mexico, three fires in the State of Texas, six fires in the
State of California, three fires in the State of Arizona, and
one fire each in the States of Oklahoma, Louisiana, Arkansas,
and Alabama (three of these fire locations involved two
separately burned trailers at the same or nearby location).  I
requested and reviewed any available police or fire department
records from local agencies involved in each of the above
incidents.

     13.  Local law enforcement agencies and fire service
personnel responded to most of these fire incidents to provide
fire suppression and investigative functions.  However, many of
the early fire incidents were originally dismissed as possible
mechanical issues and any investigative action taken was
minimal.  After numerous fire incidents continued to occur,
Swift employees recognized and were suspicious of the number of
fires occurring over a short period of time.  Swift employees
stated this number of similar fire events had never before
occurred in company history.  Swift began hiring fire
investigation consultants to assist with fire scene
examinations.  A pattern also began to develop when multiple
reports noted substantially similar methods of lighting the
trailers on fire.  The following is a brief summary of each
incident based on my review of local law enforcement reports, my

review of fire origin and cause reports, my review of other investigative materials, and my conversations with other law enforcement and Swift employees.

## FIRE EVENTS

14.   **(Fire #1)** On June 22, 2020, at approximately 2:06 a.m. local time, a fire involving a Swift Transportation trailer occurred at the TA Travel Center at 2634 U.S. Route 66 in Santa Rosa, NM 88435.  The fire started and was observed burning around the rear tires and back end of the semi-trailer.  A very limited investigation was conducted by local agencies, but they suspected mechanical equipment failure at the time of investigation.

15.   **(Fire #2)** On June 26, 2020, at approximately 10:40 p.m. local time, a fire involving a Swift trailer occurred in the parking lot of the Diamond Inn at 115 Barrow Hill Rd. in Forrest City, AR 72335.  The fire was determined to have started near the rear wheels of the trailer.  A limited investigation was completed by local agencies, but the fire case was closed out with an undetermined cause.  Comments from local investigators indicated they suspected that rags may have been stuffed around the tires of the trailer and used to start the fire.

16.   **(Fire #3)** On July 16, 2020, at approximately 1:30 a.m. local time, a fire involving a Swift trailer occurred at the TA Travel Center at 1700 U.S. Rte 66 West in Moriarty, NM 87035. The fire started and was observed in the rear tires of the trailer while the driver was sleeping in the attached tractor.

Mechanics from the Travel Center extinguished the fire and stated they observed pieces of paper stuck between the rear, tandem trailer tires, as well as a puddle of an unknown flammable liquid behind the tires.

17.   **(Fire #4)** On July 24, 2020, at approximately 5:00 a.m. local time, a fire involving a Swift trailer occurred at the Flying J Travel Center at 1 Giant Crossing, Jamestown in NM 87347.  The fire was started and observed between two rear tires of the trailer while the driver was sleeping in the attached tractor. Local police and fire agencies responded, and firefighters reported observing a rag stuffed between the two rear tires on the trailer.  Diesel fuel was also suspected as present at the origin of the fire.

18.   **(Fire #5)** On September 30, 2020 into October 1, 2020, at approximately 2:00 a.m. local time, a fire involving a Swift Transportation trailer occurred at the Flying J Travel Center at 2400 S 4th St in Sayre, OK 73662.  The fire was started and observed burning in the rear cargo area at the back of the trailer while the driver was sleeping in the attached tractor. Local police and fire agencies responded, and a private fire investigator responded to complete a fire origin and cause report.  This fire investigation found that a lock was cut off the rear cargo doors of the trailer and cardboard packing material inside the trailer was ignited at the rear doors.  This fire was classified as incendiary in nature by a Certified Fire Investigator contracted by Swift.

19. **(Fire #6)** On October 24, 2020, at approximately 2:50 a.m. local time, a fire involving a Swift trailer occurred at the Loves Travel Stop at 1900 S Mountain Rd in Tucumcari, NM 88401. The fire was started and observed burning in the rear cargo area of the trailer while the driver was sleeping in the attached tractor. Local police and fire agencies responded and determined the fire had been started in the cargo area of the trailer after the rear doors were unlawfully opened.

20. **(Fire #7)** On October 18, 2021, at approximately 2:30 a.m. local time, a fire involving a Swift trailer occurred at the Love's Travel Stop at 126 Lexington Dr in Duson, LA 70578. The fire was observed on the trailer while the driver was sleeping in the attached tractor. A Certified Fire Investigator contracted by Swift conducted a fire investigation and concluded the fire originated near the passenger side on the front axle. However, the investigator concluded that the exact cause of the fire could not be determined without "additional specialized examination." Limited information was available about this incident.

21. **(Fire #8)** On November 22, 2021, at approximately 1:28 a.m. local time, a fire involving a Swift trailer occurred at the Petro Travel Center at 14150 NM-418 in Deming, NM 88030. The fire was observed in the entire trailer cargo area at the time of discovery while the driver and his wife were sleeping in the attached tractor. Local police and fire agencies responded to contain the fire and stated in reports that during interview of the driver, he stated the truck had been parked for numerous

hours prior to the fire, which would preclude a brake fire.  A
Certified Fire Investigator contracted by Swift conducted a
scene examination and concluded the area of origin was the
driver's side rear trailer wheels.  This investigator further
concluded that the "most probable cause was likely mechanical
friction from the braking system."  Other Certified Fire
Investigators were later queried about this conclusion and
stated it was not possible to arrive at that conclusion with the
limited examination that was conducted.

22.  **(Fire #9)** On December 6, 2021, at approximately 2:59
a.m. local time, a fire involving a Swift trailer occurred near
the Mobil gas station at 48157 Memorial Drive in Newberry
Springs, CA.  Very limited information from local investigators
is currently available about this incident.

23.  **(Fires #10 and #11)** On December 19, 2021, at
approximately 10:12 p.m. local time, a fire involving two Swift
trailers occurred at the Pilot Travel Center at 1124 E Motel
Drive in Lordsburg, NM 88045.  Two Swift tractor-trailers were
parked at this Travel Center approximately five truck spaces
away from each other when separate fires occurred on each Swift
trailers only minutes apart.  Both vehicles had drivers sleeping
in the attached tractors at the time of fire.  Local police and
fire agencies responded to contain the first fire reported and
then observed the second fire shortly after arrival.  Both fires
started and were observed burning near the rear wheels of the
trailers.

24.   **(Fire #12)** On December 25, 2021, at approximately 1:45 a.m. local time, a fire involving a Swift trailer occurred at the Pilot Travel Center at 1200 Hillcrest Dr S in Sulphur Springs, TX 75482.  The fire was observed in the entire trailer cargo area at the time of discovery, while the driver was sleeping in the attached tractor.  Local police and fire agencies responded to contain the fire.  A Certified Fire Investigator contracted by Swift conducted a scene examination and concluded this fire was incendiary in nature.

25.   **(Fire #13)** On January 1, 2022, at approximately 3:07 a.m. local time, a fire involving a Swift Transportation trailer occurred at the Loves Travel Stop at 9701 I-40 in Panhandle, TX 79068.  The fire started and was observed by witnesses at the rear of the trailer while the driver was sleeping in the attached tractor.  This fire in the Swift trailer eventually spread to another semi-trailer parked alongside the Swift tractor-trailer.  Local police and fire agencies responded to contain the fire.  A Certified Fire Investigator contracted by Swift conducted an examination of the trailer after it was already removed from the original scene.  This inspection proved inconclusive due to that removal, probable destruction of the trailer during removal, and other factors, but the investigator included this fire in his report documenting his investigation of incendiary fires involving Swift trailers.

26.   **(Fire #14)** On January 6, 2022, at approximately 12:56 a.m. local time, a fire involving a Swift trailer occurred at the Loves Travel Stop at 22183 AL-216 in McCalla, AL 35111.

Local police and fire agencies responded to contain the fire, but limited information from local investigators is currently available about this incident.

27.  **(Fire #15)** On January 14, 2022, at approximately 3:29 p.m. local time, a fire involving a Swift trailer occurred at the Petro Travel Center at 110 I-35 Frontage Rd. in Pearsall, TX 78061.  This fire was observed on the rear of the trailer while the driver was sleeping in the attached tractor.  This is the first scene that occurred after ATF became involved in this investigation, and an ATF Certified Fire Investigator responded to this scene to conduct a fire Origin and Cause examination and report.  During investigation, findings revealed that the fire originated at the tires of the trailer, and cloth material was discovered around the trailer tires.  An ATF laboratory examination of fire debris from this scene, including the cloth material, indicated the presence of an ignitable liquid.  The ATF CFI assigned to this investigation classified this fire as incendiary in nature.  An additional CFI contracted by Swift also participated in the examination of the trailer and likewise classified the fire as incendiary.

28.  **(Fire #16 and #17)** On February 7, 2022, at approximately 2:30 a.m. local time, a fire involving two separate Swift trailers occurred at the TA Travel Center at 1501 N Fort Grant Rd. in Willcox, AZ 85643.  Two Swift vehicles were parked in the same parking lot approximately four parking spaces apart from one another when fires occurred on the trailers of each vehicle at nearly the same time.  Both vehicles had

sleeping drivers in the attached tractors at the time of fire.
An ATF Certified Fire Investigator responded to this scene to
conduct a fire Origin and Cause examination and report.  During
investigation, findings revealed that the fire originated at the
rear tires of the trailers, and remnants of a rag or cloth
material was discovered between the wheels of one trailer.  An
ATF laboratory examination of fire debris from this scene,
including the cloth material, indicated the presence of an
ignitable liquid.  The ATF CFI assigned to this investigation
classified these fires as incendiary in nature.  An additional
CFI contracted by Swift also examined the trailers and likewise
classified the fires as incendiary.

29.  **(Fire #18)** On February 9, 2022, at approximately 9:00
p.m. local time, a fire involving a Swift Transportation trailer
occurred near a Chevron fuel station at 25635 South Crucero Rd.
in Ludlow, CA 92338.  This fire was observed on the rear of the
trailer while the driver was sleeping in the attached tractor.
An ATF Certified Fire Investigator responded to this scene to
conduct a fire Origin and Cause examination and report.  During
investigation, findings revealed that the fire originated at the
tires of the trailer, and cloth material was discovered between
the wheels of the trailer during fire scene examination.  An ATF
laboratory examination of fire debris, including the cloth
material, indicated the presence of an ignitable liquid.  The
ATF CFI assigned to this investigation classified this fire as
incendiary in nature.  An additional CFI contracted by Swift

also participated in the examination of the trailer and likewise classified the fire as incendiary.

30. **(Fire #19 and #20)** On February 20, 2022, at approximately 2:25 a.m. and 2:50 a.m. hours local time, two fires involving Swift trailers occurred at the Flying J Travel Center at 2021 S. Mountain Rd. in Tucumcari, NM 88401 and at the Love's Travel Stop at 1900 S. Mountain Rd. in Tucumcari, NM 88401.  In each of these incidents, a fire was observed at the wheels of each trailer while the drivers were sleeping in the attached tractors.  These two locations are directly across the street from one another, and the two fires started within a 30-minute period.  An ATF Certified Fire Investigator responded to these scenes and conducted a fire Origin and Cause examination.  During investigation, findings revealed that the fire originated at the tires of both trailers, and cloth material was discovered between the wheels of both trailers during fire scene examination.  The cloth material collected was submitted for ATF laboratory examination and found to contain an ignitable liquid.  The ATF CFI assigned to this investigation classified these fires as incendiary in nature.  An additional CFI contracted by Swift also participated in the examination of the trailers and likewise classified the fires as incendiary.

31. **(Fire #21)** On February 28, 2022, at approximately 1:06 a.m. local time, a fire involving a Swift trailer occurred at the TA Travel Center at 2930 Lenwood Rd., Barstow, CA 92311.  This fire was observed on the rear of the trailer by another passing driver while the victim vehicle driver was sleeping in

the attached tractor.  The driver was able to disconnect his vehicle from the trailer after the fire was discovered.  An ATF Certified Fire Investigator responded to this scene to conduct a fire Origin and Cause examination and report.  During investigation, findings revealed that the fire originated at the tires of the trailer, and cloth material was discovered between the wheels of the trailer during fire scene examination.  The cloth material collected was submitted for ATF laboratory examination and found to contain an ignitable liquid.  During investigation of this fire, surveillance video recordings from around the time of fire were collected from the TA Travel Center, including video partially covering the parking area where the fire occurred.  Images of a suspect vehicle were later obtained from this video.  The ATF CFI assigned to this investigation classified this fire as incendiary.

32.  **(Fire #22)** On February 28, 2022, at approximately 2:42 a.m. local time, a fire involving a Swift trailer occurred at 12269 Scarbrough Ct., Hesperia, CA 92344 (near the Pilot Travel Center at 8701 US-395, Hesperia, CA 92311).  This fire occurred less than two hours after Fire #21 documented above.  This fire was observed on the rear of the trailer by another passing driver while the victim vehicle driver was sleeping in the attached tractor.  The driver was able to disconnect his vehicle from the trailer after the fire was discovered.  An ATF Certified Fire Investigator responded to this scene to conduct a fire Origin and Cause examination and report.  During investigation, findings revealed that the fire originated at the

tires of the trailer, and cloth material was discovered between the wheels of the trailer during fire scene examination.  The cloth material collected was submitted for ATF laboratory examination and found to contain an ignitable liquid.  The ATF CFI assigned to this investigation classified this fire as incendiary.

33.   During investigation of Fire #22, surveillance video recordings from around the time of fire were collected from a business near the fire scene.  The video was reviewed and a view of the victim truck at the time of fire was discovered.  On this video, approximately 15 minutes before fire became visible on the Swift Trailer, a dark colored tractor-trailer with attached white trailer was observed pulling alongside the Swift vehicle where it remained for approximately 15 minutes.  The dark tractor-trailer was then observed rapidly leaving the area, and fire appeared on the wheel area of the Swift trailer.  Only a general description and image of this suspect vehicle was able to be gathered from the video.  However, images from the video obtained in Fire #21 and this video from Fire #22 were compared, and a suspect vehicle matching the same description was observed on both videos near the times of fire.

34.   **(Fire #23)** On March 1, 2022, at approximately 3:16 a.m. local time, a fire involving a Swift trailer occurred at the Hopi Travel Plaza at 1851 State Hwy. 77, Holbrook, AZ 86025.  This fire was observed on the rear of the trailer by another passing driver while the victim vehicle driver was sleeping in the attached tractor.  The driver was able to disconnect his

vehicle from the trailer after the fire was discovered.  An ATF Certified Fire Investigator responded to this scene to conduct a fire Origin and Cause examination and report.  During investigation, findings revealed that the fire originated near the back of the trailer, and cloth material was discovered around the wheels of the trailer during fire scene examination. The cloth material collected was submitted for ATF laboratory examination and found to contain an ignitable liquid.  The ATF CFI assigned to this investigation classified this fire as incendiary.  An additional CFI contracted by Swift also participated in the examination of the trailer and likewise classified the fire as incendiary.

35.  **(Fire #24 and #25)** On September 14, 2022, at approximately 12:27 a.m. local time, two additional fires involving Swift trailers occurred at the TA Travel Center at 46155 Dillon Rd., Coachella, CA 92236.  Both of the Swift tractor-trailers involved in these fires were parked in the same parking area behind the business, with other uninvolved company's commercial vehicles parked between them, none of which caught fire.  A fire was observed by a passerby at the wheels of each separate Swift trailer, while the drivers of the Swift trucks were sleeping in the attached tractors.  An ATF Certified Fire Investigator responded to these scenes and conducted a fire Origin and Cause examination.  This investigation is still ongoing.  However, preliminary findings revealed that the fire started at the tires of both trailers in the same area of origin as the other fires documented in this series.

## INVESTIGATIVE ANALYSIS

36.  Around the beginning of 2022, after examining the
available information and data from each described incident in
this series of fires up until that point, I believed that the
same person, or persons, were responsible for the incendiary
fires.  This number of fire incidents on parked vehicles in such
a short span of time had never occurred in the reported history
of Swift based on conversations with their employees.  When I
examined the available information from each fire in this
series, there were several patterns that developed.  Each fire
involved a vehicle fully marked and identified as a Swift
vehicle, and no other trucking companies in the industry have
reported fires similar to the events in this series.  Each fire
occurred in the trailer section of the vehicles, and most have
been determined to have started near or on the trailer tires.
Once investigators were able to locate evidence and begin to
identify a method used by the suspect(s) to light the fires,
substantially similar evidence of an incendiary device was found
in matching locations on the burned trailers and collected from
multiple scenes.  Each fire in the series occurred near a large
U.S. highway, and the time between events would allow ample time
for a single suspect to travel between scenes.

37.  I also believed it may be possible to identify and
locate the suspect arsonist(s) by analyzing cellular device data
that appeared in cellular service provider's records around the
time and location of each of the fire events listed above.  In
accord with that belief, I obtained multiple federal court

orders in the District of New Mexico seeking cell phone "tower dumps," in addition to other investigative efforts.  A cell phone tower dump is defined as a download of information on all the devices that connected to a particular cell site during a particular interval.  A typical tower dump is confined to a small area and as small of a time interval as possible.  As mobile cellular device users move, their devices will connect to nearby cell towers to maintain a strong signal, even when the device is not actively in use.  These towers record certain identifying information about the devices which can be used to proximally locate a device and therefore its attributed user.  No content from any device's transmission is obtained during a tower dump.  These tower dump authorizations were made in attempts to identify common devices, and through those devices possibly person(s) who were present at the locations where the listed fires occurred.

## CELLULAR DEVICE IDENTIFICATION

38.  I obtained the above-described tower-dump orders and served them to cellular service providers AT&T, T-Mobile Wireless, and Verizon Wireless.  These three cell providers maintain control over most active cellular towers in the United States.  Data from the tower dumps I requested was received and analyzed by an ATF Intelligence Research Specialist, and a cellular connected device identified by the Mobile Station Integrated Services Digital Network Number ("MSISDN") #882-350815227830, International Mobile Subscriber Identity ("IMSI") #310170815227830, and International Mobile Equipment Identifier

("IMEI") #3569610723185305 (hereafter referred to as "Target Cellular Device") was discovered at the location of Fires #12, 14, 16, 17, 18, 19, 20, 21, 22 and 23.[1]  This device was discovered in the data provided by the cellular service provider AT&T, indicating the device was operating on the AT&T cellular network.

39.  I conducted research into these identifying numbers used by the AT&T network and learned that an MSISDN, such as the number found in the AT&T data, is an assigned number that particularly identifies a device during calls or data sessions. If the cellular device being examined were a cell phone, this MSISDN number would be referred to as the device phone number. The IMSI number is a unique 15-digit identifier given to each mobile subscriber and is stored on the Subscriber Identity Module ("SIM").  The IMSI consists of a MCC ("Mobile Country Code"), a MNC ("Mobile Network Code") and a MSIN ("Mobile Station Identification Number") linking the device to a specific country, a specific network within that country, and to a specific customer.  The IMEI number is a 15 or 16-digit number that uniquely identifies an individual wireless device.  The first 14 digits are unique, and the 15th digit is a check digit that validates the prior 14 digits.  A 16-digit IMEI is an "IMEISV." SV Stands for software version number.  The last two digits identify the software version.

---

[1] Fires #24 and 25 had not yet occurred when I obtained the tower dump.

40.  No other devices listed in the data collected during this investigation appeared at the number of scenes the Target Cellular Device appears.  Many devices appeared at two of the fire locations; a couple of devices appeared at three of the fire locations; and the Target Cellular Device appeared at ten of the locations based on the available data.  Each additional instance of the device being present was exponentially less likely to be a coincidence.  These facts led me to believe the Target Cellular Device identified above, operating on the AT&T cellular network, was associated with an individual who was directly involved, or may have information about the subject directly involved, in the setting of these incendiary fires.

41.  I conducted numerous open-source inquiries into the Target Cellular Device and discovered the device identified on the AT&T network was connected with a company called "Geotab." Geotab is a Canadian-based commercial telematics provider who specializes in connecting vehicles to internet or satellite-based services and providing resources to help organizations with fleet management tasks.  Through that research, I learned that the Target Cellular Device discovered during my investigation was possibly a type of device consistent with those used in the commercial vehicle industry to track and monitor the location and condition of cargo or vehicles in transport.  These types of devices continuously monitor and report the location of the device attached to a vehicle or container, among other possible data points.  Due to these facts, it was my belief that the described Target Cellular

Device was a device present on a vehicle or container being utilized repeatedly and frequently by a person who was present at the time of incendiary fires listed above at least ten different times.

### TRACKING OF SUSPECT DEVICE AND VEHICLE IDENTIFICATION

42.   On March 23, 2022, I authored and obtained a search warrant and pen-register order for the Target Cellular Device, authorizing the active monitoring and receipt of prospective cell-site data and pen-register data, as well as historical location information for the Target Cellular Device.  The Honorable Jerry H. Ritter issued a warrant authorizing the above in the District of New Mexico.  Under that warrant and subsequent extensions, ATF agents have been regularly monitoring the location and travel directions of the Target Cellular Device since that date.

43.   The historical location data received pursuant to that same court order indicated the device had traveled cross-country on a frequent basis, on numerous interstate highways including those where fires in this series occurred.  The device traveled anywhere from New York to California, and many states in between.  The real-time or prospective location data received was of sufficient quality to identify general pattern of locations of the device and to establish roadways likely traveled and directions of travel over time.

44.   On March 29, 2022, while remotely monitoring the location of the Target Cellular Device, I saw the device begin to travel westbound on Interstate 10 in the Arizona, before

eventually crossing into the Central District of California at approximately 10:49 p.m.  It then left the Central District of California, traveling south to Calexico, California, on the morning of March 30, 2022.  At approximately 2:00 p.m. the device then crossed back into the Central District of California and remained near Indio.  At approximately 2:54 p.m. the Honorable Kenly Kiya Kato issued a warrant authorizing the interception of cell site location information, precision location information, and the use of a cell site simulator in the Central District of California to identify the Target Cellular Device's precise location.

45.  On March 30, 2022, ATF agents conducted a surveillance operation in California where the device appeared to be located based on the information received pursuant to the warrant and pen register order previously obtained.  ATF agents initiated surveillance in the area of the Love's Travel Stop located at 45-761 Dillon Rd., Coachella, CA.  At approximately 6:00 p.m., agents observed a dark, maroon colored tractor-trailer parked in a small area away from other vehicles across the street from the Love's Travel Stop.  The vehicle shape, size and features were consistent with suspect vehicles observed in surveillance video from Fires #21 and #22.  ATF agents observed and photographed identifying markings on the tractor, including the company name "Vestra Logistics LLC", USDOT #3161269, and MC#111369.  The tractor portion did not have a visible license plate affixed to the front of the vehicle.  The trailer connected to this tractor was identified as a white in color box van with a refrigeration

unit, bearing Michigan license plate D982313.  This license
plate did not return with a current registration when queried in
motor vehicle and law enforcement databases.

46.  Between 6:00 p.m. and 8:45 p.m. on March 30, 2022,
agents saw the vehicle parked in the same location without
moving.  During this time, geolocation information showed the
Target Cellular Device stationary in the same area where the
agents were conducting surveillance.  ATF agents then saw the
truck begin to leave the area and travel on the highway at
approximately 8:47 p.m.  Assisting California Highway Patrol
troopers conducted a traffic stop on the tractor-trailer for an
unrelated traffic violation several miles away from the truck
stop where the vehicle was identified.  During the traffic stop,
the driver and sole occupant of the vehicle was identified as
PRICOP.  The tractor PRICOP was driving (hereafter referred to
as the "Subject Vehicle") was identified as a 1997 Kenworth
T2000, with Michigan license plate RC06532
(VIN#1XKTDB9X8VJ741810).  The license plate for the tractor
portion of the Subject Vehicle was located inside on the
dashboard of the vehicle with the numbers and markings facing
inside so they could not be observed outside the tractor.  This
license plate was queried in law enforcement and motor vehicle
databases and returned with registered owner Laurentiu Resteman.
However, further investigation discovered that the vehicle was
titled in the State of Michigan with listed owner PRICOP.
During the traffic stop, CHP troopers also viewed a State of
Michigan vehicle registration card that listed PRICOP as the

23

"Owner (Lessor)" of the tractor, as well as Laurentiu Resteman listed as a "Lessee."  CHP troopers completed the traffic stop after this identification and PRICOP left the area.  No other subjects were present in the tractor.

47.  ATF agents noted that cell site and ping information from the live time intercept showed movement away from the truck stop at the same time they saw PRICOP's tractor leave the stop and enter the highway.  They noted location information around where he was stopped by CHP officers during the same time frame.  After PRICOP was released from the traffic stop, agents noted cell site and ping locations consistent with the Subject Vehicle traveling away westbound.   All of these investigative steps helped agents to confirm that the Subject Vehicle driven by PRICOP contained the Target Cellular Device agents were tracking.

## SUSPECT IDENTIFICATION

48.  During the traffic stop described above, the driver of the Subject Vehicle was identified as PRICOP.  I conducted a records review using PRICOP's personal identifiers and discovered PRICOP had an extensive criminal history in numerous states, including previous federal felony convictions in the Eastern District of Michigan, Case Number 2:17-CR-20188, for Interstate Transportation of Stolen Property and Aiding or Assisting the Preparation of a False Return.  In this case, PRICOP was documented as involved in the repeated theft of cargo from commercial vehicles, including those operated by Swift. After a joint investigation by HSI, Michigan State Police, Swift

Transportation Security, and others, PRICOP was arrested and convicted of federal charges related to this case.  This information indicated a connection explaining why PRICOP may be motivated to target Swift vehicles.  Continued examination into the details of this former case revealed that PRICOP was also contacted at that time by a Swift Security Investigator who told PRICOP face-to-face that Swift had caught him through their investigation.

49.  PRICOP served a prison term of approximately 815 days related to the above-mentioned criminal case and was released from federal prison on approximately June 28, 2018.  PRICOP began a 12-month term of supervised release after serving his prison sentence.  Notably, PRICOP concluded his supervised release approximately one year prior to Fire #1 in this investigation.

50.  Additional law enforcement records queries conducted using the Subject Vehicle identifiers resulted in the discovery of several other records demonstrating PRICOP in possession and control of the Subject Vehicle.  One example was a Driver/Vehicle Examination Report from the Missouri State Highway Patrol, dated March 26, 2022, at approximately 9:57 a.m.–11:02 a.m.  This document identified PRICOP as the driver of the same Subject Vehicle, including tractor and trailer, at the time of the inspection at a specific location in Missouri.  ATF agents were able to review historical location data from the Target Cellular Device and found correlating evidence indicating the device was stopped at the same location found in the MSHP

Report, for the same period.  The same Subject Vehicle ATF
agents saw in California on March 30, 2022 was identified in the
report of MSHP inspection on March 26, 2022.

51.  An additional record demonstrating PRICOP in
possession and control of the Subject Vehicle consisted of a
License Plate Reader record dated February 8, 2022 collected at
an LPR location near Indio, CA.  On that date, the Subject
Vehicle was recorded passing through an LPR checkpoint and
photographs of the vehicle were recorded.  In these photographs,
a subject closely resembling PRICOP is in the driver's seat of
the Subject Vehicle.  Numerous other LPR records involving the
Subject Vehicle were also located in many different parts of the
United States, although these other records did not include
photographs of the vehicle driver.

## TRACKING DEVICE INSTALLATION

52.  On March 31, 2022, while remotely monitoring the
location of the Target Cellular Device, ATF agents saw the
Subject Vehicle traveling eastbound on Interstate 10 in
California, before eventually crossing over the border into
Arizona at approximately 2:14 p.m.  The Subject Vehicle
continued traveling on Interstate 10 in Arizona.  At
approximately 4:00 p.m., the Subject Vehicle stopped near a gas
station in Tolleson, Arizona where it remained for some time.
At approximately 5:30p.m. on March 31, 2022, the Honorable
Michelle Burns issued a warrant in the District of Arizona
authorizing the installation of a tracking device on the Subject
Vehicle.

53.   On March 31, 2022, ATF agents initiated a surveillance operation on the Subject Vehicle in Arizona.  At approximately 7:20 p.m., ATF agents saw PRICOP parking the Subject Vehicle at the Pilot Travel Center at 14905 Cordes Lake Rd., in Cordes Lake, AZ, before entering the business for a short period.  At that time, ATF agents completed installation of a tracking device on the Subject Vehicle.  Agents were able to continue monitoring the location of the Subject Vehicle remotely after the installation.

### IDENTIFICATION OF TARGET CELL PHONE

54.   After PRICOP was identified as involved and in control of the Subject Vehicle, I requested or completed numerous open-source records queries in attempts to identify a cellular phone attributed to him.  I located numerous records indicating the telephone number (313) 290-7196, serviced by T-Mobile Wireless, was assigned to PRICOP.  On April 11, 2022, I requested subscriber identifying information for the telephone number (313) 290-7196.  I received a return response from T-Mobile on April 13, 2022.  This response from T-Mobile indicated telephone number/MSISDN (313) 290-7196 (hereafter referred to as "Target Cell Phone") was assigned to subscriber Viorel PRICOP, and it included his name and social security number.  Additionally, these records also indicated this account had been open and attributed to PRICOP since August 27, 2019, the date which service with T-Mobile was initiated.

55.   In addition to the above, ATF personnel were able to complete a query of the telephone number (313) 290-7196 in the

tower dump information collected during this investigation.  In
these records, the telephone number (313) 290-7196 appeared in
the tower dump data collected from the locations around Fire
#10, 11, and 18.  This information indicated that the Target
Cell Phone was physically present, and attempted or completed a
phone call or message, while located in the area of those three
fire scenes.

56.  After learning of the above facts, I believed that
comparing historical location information from the Target Cell
Phone and the historical location information from the Target
Cellular Device attached to the Subject Vehicle would provide
evidence either confirming or dispelling the reasonable belief
that PRICOP was present at the fire scenes documented in this
investigation, along with the Subject Vehicle.  I requested and
obtained a search warrant in the District of New Mexico
authorizing the collection of historical location information
from the Target Cell Phone.  This warrant covered the entire
period in which the fire events in this series occurred.  This
warrant also included an authorization to obtain prospective
location information from the same Target Cell Phone, allowing
remote monitoring of PRICOP's location.

## HISTORICAL CELLULAR DATA ANALYSIS

57.  After service of the above-mentioned search warrant
upon T-Mobile Wireless, the historical location information from
the Target Cell Phone was collected and analyzed by ATF Special
Agents and Investigative Research Specialists. The historical
location data from the Target Cell Phone was then compared to

the historical location data previously obtained from the Target Cellular Device on the Subject Vehicle.  This analysis clearly resulted in a strong, direct correlation in the location of both devices beginning in approximately September 2021 through the end of the data collection period.  The data analysis concluded that the owner of the Target Cell Phone, Viorel PRICOP, was likely the same person operating or traveling in the tractor-trailer with the Target Cellular Device.

58.  Continued analysis and examination of the historical location data also indicated that PRICOP's cellular phone was in the general area of 22 of the first 23 fires that had occurred to that date, which are previously described in this affidavit. When the cellular phone location points were plotted in conjunction with the times and locations of the incendiary fire events, a strong, direct correlation was observed with most documented fires in this series.  Due to limitations of cellular location data collection, storage, record keeping, or technical limitations, investigators were not always able to place the Target Cell Phone device precisely at the fire scenes at the exact time of the fires.  However, in most cases, the cellular location data confirmed the device was located in the general area of the relevant locations during the relevant timeframes. Investigators also noted a pattern of movement away from many of the arson scenes either immediately after the reported fire time or shortly thereafter.

59.  For example, in Fires #21 and 22 (the two fires from February 28, 2022, in Hesperia and Barstow, CA, for which I seek

the criminal complaint here), the ping data clearly shows the Target Cell Phone and the Target Cellular Device pinging near the fires as they happened and traveling consistently with PRICOP setting each fire.  The first fire in Barstow occurred at approximately 1:46 a.m. Mountain Time,[2] and the ping data showed a mobile data transmission from the Target Cell Phone on a tower only a few miles away at 1:38 a.m.



After the fire at 1:46 a.m., the data showed the Target Cell Phone and the Target Cellular Device traveling south toward Hesperia, where they then pinged on cell towers around Hesperia at the time of the Hesperia fire at 3:30 a.m.

---

[2] Since the fires occurred across numerous time zones, the ATF Special Agent analyzing the data converted the time for all events into Mountain Time for ease of understanding.



This included data access on a cell tower 1.3 miles away from the site of the Hesperia fire at 3:06 a.m.



Finally, the data showed the Target Cell Phone and the Target
Cellular Device traveling away from Hesperia right after the
fire at 3:30 a.m.



60. The data showed a virtually identical pattern for
nearly all of the fire events summarized above.

61. ATF investigators also noted other patterns in the
location data received from the cellular devices during analysis
of the historical period from approximately June 2020 through
March 2022. Agents were able to identify the most accessed cell
site/sector from the the Target Cell Phone. In my training and
experience, the most accessed cell sites generally indicate
where a cell phone user spends most of their time, which
generally indicates a home or work location being within the
coverage area of the cell site. The most accessed cell site

during the timeframe of the dataset covering all the fire incidents in this investigation was located in Allen Park, MI. Through drivers license records and other law enforcement databases, I was able to confirm that PRICOP has a listed residential address at 7837 Kolb Ave., in Allen Park, MI. This address was approximately half of a mile from the most accessed cell site and sector. I confirmed through available law enforcement records and databases that PRICOP has been using the above residential address from at least January 2020 through the present date.

62. The second most accessed cell site over the analyzed period was approximately three miles to the west of the most accessed cell site in Allen Park, MI. This cell site covered the area of Blue Stars Inc. business at 7525 Holland Rd., Taylor, MI. Using the tracking device that was installed on the Subject Vehicle, agents were able to confirm that PRICOP was parking and storing the Subject Vehicle at that address when not driving it cross country.

<u>**ONGOING SURVEILLANCE**</u>

63. ATF investigators have continued to remotely monitor the location and movement of PRICOP and the Subject Vehicle throughout this investigation, using a variety of surveillance techniques. In addition to previously mentioned investigative techniques, ATF has conducted mobile and fixed surveillance on a frequent basis. This included surveillance of PRICOP while he was traveling cross-country in the Subject Vehicle. During each of these instances, PRICOP was seen operating and driving the

Subject Vehicle.  No other persons were visible in the Subject Vehicle at any time.

64.  Surveillance efforts also included in-person surveillance conducted by ATF agents and task force officers in August 2022.  During that surveillance, investigators saw PRICOP operating the Subject Vehicle and parking the vehicle at the Blue Stars Inc. at 7525 Holland Rd., Taylor, MI 48180.  This confirmed information already ascertained using cellular location data and a tracking device previously mentioned. During surveillance, ATF agents saw PRICOP park and store the Subject Vehicle on the Blue Stars property and personally move in and out of the building at that address on numerous occasions.  PRICOP moved items from various vehicles on the property, including the Subject Vehicle, into and out of the Blue Stars commercial building.

65.  During the described ongoing surveillance activity from approximately March 2022 through present date, ATF agents have also seen several personal vehicles associated with PRICOP. ATF agents, including myself, have seen PRICOP operate or utilize a maroon in color, 2008 Ford Econoline passenger van, bearing Michigan license plate EQK5415.  PRICOP has been repeatedly seen driving this vehicle to and from his residence, and the Blue Stars business address.  PRICOP was seen moving unknown items from the Subject Vehicle and Blue Stars facility into this maroon Ford.  I conducted a records check on this vehicle and confirmed that the Maroon Ford Econoline is

registered to Viorel PRICOP at 7837 Kolb Ave., Allen Park, MI 48101.

66.  ATF agents, including myself, also saw a green in color 2006 Chrysler Town and Country van, bearing Michigan license plate DXM7387. I conducted a records check on this vehicle and confirmed that the Chrysler van is registered to Viorel PRICOP at his residential address 7837 Kolb Ave, Allen Park, MI 48101.  This vehicle has been parked outside the Blue Stars facility for an extended period, and it appears that PRICOP stores the vehicle on that site.

67.  Surveillance efforts similar to those described above continued to occur, and ATF agents were able to maintain awareness of PRICOP's movements and actions through this activity.

**DATA ANALYSIS OF MOST RECENT FIRE EVENTS (FIRES #24 and 25)**

68.  On September 14, 2022, at approximately 2:30 a.m., I was notified of two additional fire events involving Swift vehicles after approximately six months of no new fires.  After learning of these fires that occurred on September 14, I immediately examined prospective cellular location data from PRICOP's cell phone and the Target Cellular Device on the Subject Vehicle, which were still being received pursuant to previously mentioned federal search warrants.  The location data from PRICOP's cell phone clearly showed that he was traveling westbound along I-10 near these fire locations just prior to the time of reported fires.  I observed that he appeared to have stopped and remained in the area near the fire locations for

more than one hour.  I then noted he began traveling westbound
on I-10 once again approximately one hour after the report of
fire to local emergency dispatch.

69.  At approximately 2:34 p.m. on September 14, 2022, ATF
agents conducted mobile surveillance and located the Subject
Vehicle parked near a truck stop at 11673 S. Etiwanda Ave. in
Fontana, California 92337.  Agents were able to locate the
vehicle using the same prospective cellular location data
previously utilized and identified the Subject Vehicle via
photographs, markings on the doors, and the attached license
plate.  Agents also saw a white male subject seated inside the
vehicle who matched PRICOP's general description and appearance.
However, this subject did not exit the vehicle and was not able
to be positively identified at that time.

<u>**SEARCH WARRANT SERVICES**</u>

70.  On September 15, 2022, at approximately 11:45 p.m.
local, while remotely monitoring the location of the Subject
Vehicle and PRICOP via cellular location information, I saw the
Subject Vehicle and PRICOP were present and stopped just outside
Barstow, California.  The Subject Vehicle and PRIOCP remained in
that area in the Central District of California for
approximately 3 hours.  At approximately 12:45 p.m. local on
September 15, 2022, the Honorable Kenly Kiya Kato issued search
warrant 5:22-MJ-00583 in the Central District of California
authorizing a search of the Subject Vehicle for evidence of
criminal involvement in this case.

71.   In addition to the above warrant, I also authored and obtained two search warrants in the Eastern District of Michigan, the District wherein PRICOP's personal residence and personal vehicle were located.  On September 15, 2022 at approximately 2:45 p.m., the Honorable David R. Grand issued search warrants 2:22-MC-51476-1 and 2:22-MC-51476-2 in the Eastern District of Michigan, authorizing the search of PRICOP's residence at 7837 Kolb Ave in Allen Park, Michigan, and the search of the 2008 Ford Econoline Van belonging to PRICOP.  Both warrants were obtained to authorize a search of those locations for evidence of criminal involvement in this case.

72.   On September 16, 2022, at approximately 6:00 a.m., ATF agents executed search warrant 5:22-MJ-00583 on the Subject Vehicle, which had traveled near Jamestown, NM, since obtaining the warrant while it was in the Central District of California. The search warrant conducted on the Subject Vehicle yielded, in summary: PRICOP's cell phones, a tablet computer, two Garmin GPS devices, numerous external hard drives, cloth/paper rags with suspected odor of an ignitable liquid, a gas torch, cigarette lighters, a suspected ignitable liquid, and numerous documents, receipts, and travel log books.

73.   While the search was being conducted on the Subject Vehicle, ATF agents in Michigan also executed search warrants 2:22-MC-51476-1 and 2:22-MC-51476-2 at PRICOP's residence and on his Ford van, which was also located in Michigan.  These search warrants yielded, in summary: personal computers, cellular phones, documents, and records.

## INTERVIEW OF PRICOP

74.   During the above search warrant services, PRICOP was detained and transported to a local New Mexico State Police office for interview.  PRICOP was advised of his <u>Miranda</u> rights and agreed to speak with agents.  During interview, PRICOP stated he is the owner of the Subject Vehicle and is the only driver who uses the tractor.  He further stated that he always travels alone and does not drive with a second driver or other passenger.  PRICOP admitted to frequently traveling in the areas along I-40 and I-10, the areas where a majority of fires have occurred.  PRICOP provided his cell phone number, confirming that he owned, possessed, and utilized the cellular phone agents had been tracking.

75.   PRICOP was asked about his criminal history, and he stated that he had an "IRS problem," presumably speaking about his previous federal arrest.  PRICOP denied any wrongdoing in that incident for which he was previously convicted.  PRICOP was then asked about fire incidents involving Swift vehicles.  PRICOP denied any involvement in setting fires on Swift vehicles but admitted he had seen a fire on Swift vehicle in the last few days (presumably referencing Fires #24 and 25).  PRICOP also vaguely referred to other fires, including one in Texas, but did not provide specifics.  He also stated that he knew there were some photographs or videos of at least one fire incident on his cell phone.

76.   Throughout the interview, PRICOP continued to deny that he was responsible for the arsons involving Swift vehicles.

PRICOP indicated he had heard that Swift is a "bad company" and mentioned that Swift is too big of a company to hurt, stating, "You cannot hurt Swift."  Following interview, PRICOP was permitted to return to the Subject Vehicle and leave the area pending further review of evidence recovered during the search warrants.

## EXAMINATION OF SEARCH WARRANT EVIDENCE

77.  Numerous physical document and digital devices, including cell phones, computers, and storage devices, were collected from PRICOP's tractor-trailer, home, and personal vehicle.  Those items were imaged and examined for additional evidence by ATF Digital Forensics Branch personnel and assisting special agents.  During the examination of two cell phones seized from PRICOP, which bear numerous identifying accounts and information linking PRICOP to the device, five videos of Swift trailers burning were recovered from these two cell phones. These videos were found to be videos of the fire incidents documented in this series as Fires #16 and #17 which occurred in Willcox, AZ on February 7, 2022, and Fire #8 in Deming, NM on November 22, 2021.  PRICOP's voice could be heard commenting on the fires burning on these recordings.

78.  One of the items seized from PRICOP's tractor-trailer was a Garmin Fleet 790 GPS navigation device.  This device bore identifying labels indicating it was likely capable of utilizing a cellular connection and is believed to possibly be the Target Cellular Device previously mentioned in this affidavit.  During examination of this device, a historical GPS record was observed

indicating on September 13 at approximately 5:55 p.m., PRICOP
was traveling on Interstate 10 between Arizona and California.
A second location record from this device indicated PRICOP was
present near Ontario, CA on September 14, 2022, at approximately
2:58 p.m.  This path of travel further indicates that PRICOP
would have traveled through the Coachella, CA area where the
latest fires in this series occurred, on the date that they
occurred.

79.  Numerous logbooks, bills of lading, shipping receipts,
and other record keeping documents were obtained in both paper
and digital form from PRICOP's vehicles and residence.  Many of
these documents were found to contain location information, such
as cargo pickup and delivery dates, which coincided with
locations where fires in this series occurred.  These documents
have provided additional corroborating information related to
numerous of the fires documented in this series.

## INTERSTATE COMMERCE

80.  I have spoken with Swift employees through the course
of this investigation and conducted other research, and I have
learned the following.

81.  The victim of each fire documented in this case,
Swift, is one of, if not the largest interstate truckload
shipping carrier, with over 20,000 trucks and approximately 40
major terminals.  Swift is the largest common carrier in the
United States, providing transport services to a myriad of
different business throughout the United States and other
countries.  During the fires documented in this series, Swift

has experienced loss of equipment and vehicles, loss of cargo belonging to numerous different customers, and has been disrupted in their mission of transporting cargo across the United States.  The Swift vehicles involved in these fires were each engaged in the transportation of goods between states, and in some cases, internationally.  At this time, Swift has estimated a total loss of value of nearly $2,000,000 from these fire incidents.

## IV. <u>CONCLUSION</u>

82.  For all the reasons described above, there is probable cause to believe that PRICOP has committed a violation of 18 U.S.C. § 844(i) (Arson of Property in Interstate Commerce) on February 28, 2022.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 7th   day of October, 2022.

_____
UNITED STATES MAGISTRATE JUDGE